UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC OMARI NORMAN,

              Petitioner,

                                           CASE NO. 2:12-CV-10237
v.                                     HONORABLE GERSHWIN A. DRAIN

MARY BERGHUIS,

              Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**    **Introduction**

Michigan prisoner Dominic Omari Norman ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 asserting that he is being held in violation of his constitutional rights.  Petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in Wayne County Circuit Court.  He was sentenced to 25 to 50 years imprisonment on the robbery conviction, a concurrent term of five to 10 years imprisonment on the assault conviction, a concurrent term of two to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2007.  In his pleadings, he raises claims concerning the sufficiency of the evidence, the effectiveness of trial and appellate counsel, and his confrontation rights.

Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated herein, the Court concludes that Petitioner's claims lack merit and denies the petition. The Court also denies a certificate of appealability.

## II.    Facts and Procedural History

Petitioner's convictions arise from the non-fatal shooting and armed robbery of David Tucker during the early morning hours on October 28, 2006 in Detroit, Michigan. At trial, Tucker testified that he got home from work around 4:00 p.m. on October 27, 2006 and had a glass of wine with his fiancé, Stacey Andrews, before leaving to go out for the evening. He went to a friend's house and drank a pint of gin, then proceeded to the Ascot Lounge for a friend's birthday party. He drank about four drinks at the bar before it closed at 1:00 a.m. He saw Petitioner, an acquaintance from the neighborhood, at the bar, as well as a friend, Aaron Nelson, whom he called Snipes or Snizzle. When the bar closed, the three men decided to go to an after hours club. Tucker drove the three of them to the club, which was just over a mile away from the bar, in his van. When they got to the club, Petitioner said he wanted to go home. The three of them got back into the van with Tucker driving, Petitioner in the passenger seat, and Snipes in the backseat. While Tucker was driving, Petitioner asked him how much money he had. Tucker said that he had $30.00. Petitioner demanded the money, but Tucker refused. Tucker then heard gunfire and saw that Petitioner was shooting at him. Tucker jumped out of the van but could not run away because his leg was broken. Petitioner approached him, put a gun to his head, and demanded the money. Tucker complied. Petitioner threatened to kill Tucker, but a neighbor said something which caused Petitioner to tell the person to get back in the house and leave the scene. Tucker crawled under a nearby car and called 911.

2

Petitioner said that he was intoxicated, in shock, and afraid he was going to die. When the police arrived, he told them that the shooter was about his complexion, but taller and heavier than him.  He could not remember the man's name, but he was pretty sure that he told them the man had been in his car.  Petitioner was treated by EMS and taken to the hospital where he was treated for several gunshot wounds and underwent surgery.  He remained in the hospital for five days.  Tucker's medical records were admitted into evidence.  While Tucker was hospitalized, his fiancé and a friend named Chuck visited him and asked who shot him.  Tucker could not remember his name at first but thought that he lived near Prairie Street.  Chuck said a few names, including Dominic.  Tucker said yes that Dominic was the name of the man who shot him.

After Tucker was released from the hospital, Detroit Police Sergeant Jason Marzette visited him at home and obtained a statement from him.  On a second visit, Marzette showed him several photographs, but none were of the shooter.  On a third visit, Marzette showed him one or more photographs and Tucker identified Petitioner as the shooter. Petitioner acknowledged that he could not think of the Petitioner's name initially, but testified that he had no doubt that Petitioner was the man who shot him.

Tucker's fiancé, Stacey Andrews, testified that Tucker was also known as Dollar Dave.  She recalled visiting him in the hospital after the shooting.  He told her that he knew the man from the neighborhood who had shot him, but he could not remember his name. When she, Chuck, and Tucker discussed who did the shooting, Chuck suggested several names, including Dominic.  Petitioner said yes, Dominic was the shooter.  Andrews testified that she subsequently called Sergeant Marzette and reported this information.

Detroit Police Officer Michael McGinnis testified that he arrived at the scene of the

3

shooting at about 1:45 a.m.  He found Tucker about 12 houses from his van on Inverness Street, hiding behind a car.  Tucker had suffered multiple gunshot wounds, including wounds to his leg and hand.  He was scared and kept asking for EMS.  Tucker told him that he had been at the Ascot Lounge and an after hours club and described the shooter as a taller and heavier black male between 29 and 30 years old, but did not give a name. Officer McGinnis participated in the search of Petitioner's home.  He admitted that the police did not recover any evidence from the home to implicate Petitioner in the shooting.

Detroit Police Sergeant Jason Marzette testified that he arrived at the scene of the shooting at about 1:50 a.m. and was the officer-in-charge of the case.  It was cold and raining.  He examined Tucker's van, which was stopped in a front yard.  There was blood on the driver's side of the van, the steering wheel, and the door.  He did not find any shell casings and the evidence technicians did not recover any further evidenced from the van. While investigating the case, he spoke to Tucker's mother and she gave him the name of a possible witness, Anthony Bivens.  Sergeant Marzette spoke with Bivens.  Based upon that conversation, he began investigating neighborhood men named "Dominique" ranging in age from 21 to 30 years old.  He came up with five photographs and showed them to Tucker, who did not identify any of those men as the shooter.  Based upon his conversation with Bivens, he also investigated a vehicle, which was eventually found parked on Inverness Street in front of Petitioner's home.  He obtained Petitioner's driver's license photograph.  He again met with Tucker, who identified Petitioner as the shooter.  Marzette participated in Petitioner's arrest and the search of his home.  Marzette acknowledged that no evidence of the shooting was recovered.

Marzette also testified about his efforts to secure Anthony Bivens' and Aaron

Nelson's appearances at trial. Marzette attempted to serve Bivens with subpoena at his last known address, as well as another address, on several occasions. Marzette said that Bivens subsequently contacted the police and said that he has no desire to appear in court and could not and would not help with the case. Marzette said that it took several months to learn Aaron Nelson's real name. He then visited his house, spoke to his father, and contacted another county's sheriff's department. Both a subpoena and a material witness detainer were issue for Nelson.

On cross-examination, Marzette testified that Bivens told him that he was in another vehicle on Inverness Street at the time of the shooting. Bivens did not see the shooting but gave the police the name Dominic based upon his conversations with a third party.

Detroit Police Investigator Gary Wayne DeNeal testified that he interviewed Petitioner after his arrest. He advised Petitioner of his constitutional rights and obtained a written, signed statement. In that statement, Petitioner recalled meeting Dollar Dave at the bar in October and driving to an after hours club with him and another man. Petitioner said that no one was there so he asked Dollar Dave to take him home. Dollar Dave then dropped him off at home.

Petitioner did not testify at trial. His wife, Qiana Norman, testified that she saw him after work on October 27, 2006. He was happy and gave her $200.00 for household expenses. He went out drinking with friends that evening and, at one point, she retrieved her car so he would not drive. Petitioner's wife and mother-in-law, Linda Crank, both testified that he returned home between 1:00 and 1:30 a.m. on October 28, 2006 and acted normally.

At the close of trial, the jury found Petitioner guilty of the charged offenses. The trial

court subsequently sentenced him to the terms of imprisonment previously set forth.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising a claim concerning the sufficiency of the evidence to support his armed robbery conviction. The court denied relief on that claim and affirmed Petitioner's convictions. *People v. Norman,* No. 277990, 2008 WL 1961223 (Mich. Ct. App. May 6, 2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Norman,* 482 Mich. 975, 754 N.W.2d 897 (2008).

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning the effectiveness of trial and appellate counsel and his confrontation rights. The trial court denied relief pursuant to Michigan Court Rule 6.508(D)(3). *People v. Norman*, No. 06-014173 (Wayne Co. Cir. Ct. Oct. 9, 2009). Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Norman*, No. 298603 (Mich. Ct. App. March 11, 2011) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Norman,* 490 Mich. 859, 802 N.W.2d 55 (2011).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.     He is entitled to a new trial or dismissal of the armed robbery conviction and sentence where there was insufficient evidence to find for that offense.

II.    Appellate and trial counsel's constitutionally ineffective assistance established "good cause" and "actual prejudice" for his failure to properly raise these issues in his prior appeal, *inter alia*:

    a.    Trial counsel failed to properly prepare and investigate

6

his case before trial and failed to present a substantial defense;

b.    Trial counsel failed to gather and disclose exculpatory evidence crucial to the defense;

c.    Trial counsel allowed the prosecutor to introduce a medical report into the trial, which deprived Petitioner of the right to confront his accuser;

d.    The cumulative effect of trial counsel's errors denied him a fair trial and due process of law; and

e.    Appellate counsel failed to seek a *Ginther* hearing and create a complete record for appellate review.

III.    Petitioner was denied his constitutional right to confront his accuser when the prosecution had Sgt. Jason Marzette testify that jailhouse informant Anthony Bivens had called him and did not want to participate in the trial; this testimony was entered into evidence by the prosecution without having the jailhouse informant present in the courtroom.

Respondent has filed an answer to the petition contending that it should be denied because the claims are barred by procedural default and/or lack of merit.

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners.  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable

7

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

8

on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require citation of [Supreme Court]

cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## VI.    Analysis

### A.    Procedural Default

As an initial matter, Respondent contends that Petitioner's ineffective assistance of counsel and confrontation claims are barred by procedural default.  It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The United States Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue

10

involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural issues are intertwined with the merits of Petitioner's issues and the substantive issues are simpler to resolve. Accordingly, the Court shall proceed to the merits of Petitioner's claims.

### B.    Merits

#### 1.    Sufficiency of the Evidence

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his armed robbery conviction. Petitioner essentially claims that the prosecution failed to establish that a robbery occurred and/or that he was the perpetrator of the crime.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements

11

of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of armed robbery are: "(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130 (1999). The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the charged crime. *See, e.g., People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Kern, supra.* Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985).

Petitioner first raised this claim on direct appeal in the state courts. Applying the

12

*Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's armed robbery conviction. The court explained, in relevant part:

> Defendant does not dispute that, after the victim, David Tucker, defendant and another passenger left the after-hours club parking lot to take defendant home, someone assaulted Tucker. Defendant argues, however, that there was insufficient evidence of a robbery. Defendant alternatively argues that, if Tucker were robbed, defendant did not do it because Tucker had already dropped defendant off at his home before the robbery and shooting occurred.
>
> There was sufficient evidence presented at trial to enable the jury to find that the elements of armed robbery were proven beyond a reasonable doubt. Tucker's testimony indicated that defendant asked him how much money he possessed and demanded that Tucker give defendant his money; upon Tucker's refusal, he saw, heard, and felt defendant shoot him multiple times. Tucker further testified that, after he attempted to get out of the van and fell to the ground, defendant approached him and placed the gun to his head, demanded Tucker's money, and stated he was going to kill Tucker, at which point Tucker gave him the money. The evidence reflected that Tucker was bleeding, and he thought he might die from his injuries while he waited for an ambulance. He was afraid defendant was going to kill him. A reasonable inference can be drawn that, in comparison to losing his life, it was an understandable and reasonable oversight that he did not mention the small amount of money taken from him in his telephone call to 911. Moreover, there was consistent testimony from Tucker and other witnesses that Tucker knew who the perpetrator was, but could not remember his name. He provided an accurate physical description and location information. The investigating officer also came up with defendant's name through his independent investigation. Tucker rejected several photographs that were presented to him, but immediately recognized defendant's photograph as the person who shot and robbed him. [Tucker's] testimony alone, if believed by the jury, was sufficient to sustain the conviction.

*Norman*, 2008 WL 1961223 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim's testimony, if believed, provided sufficient evidence of an armed robbery and Petitioner's identity and guilt of the

13

crime. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Petitioner essentially challenges the jury's credibility determination and the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The victim's testimony, if believed, provided sufficient evidence that Petitioner committed the armed robbery – and shot the victim. Habeas relief is not warranted on this claim.

## 2. Effectiveness of Trial and Appellate Counsel

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to properly investigate and prepare a defense, for failing to gather and present exculpatory evidence, and for failing to object to the admission of the victim's medical records, and based upon trial counsel's cumulative errors. Petitioner relatedly asserts that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel issues on direct appeal.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's

14

performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d)

15

are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.  *Id.* at 788.

Petitioner raised these issues on collateral review in the state courts and was denied relief.  The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.[1]

Petitioner first asserts that trial counsel was ineffective for failing to properly investigate and prepare a defense.  He believes that counsel should have further investigated and produced Tucker's friend Chuck because, according to Petitioner, Chuck told Tucker that the person who shot and robbed him was named Dominic.  Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d 251 at 258.   "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them."  *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991));

---

[1]The Court notes that it would reach the same result under a *de novo* standard of review.

see also Wiggins, 539 U.S. at 526

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making such strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to present evidence or call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner has not shown that trial counsel erred or that he was prejudiced by counsel's conduct. As an initial matter, the premise of Petitioner's argument is flawed. According to the trial testimony, Chuck did not tell Tucker that a man named Dominic committed the offense; rather Chuck suggested the names of men from the neighborhood to help Tucker recall the name of the perpetrator. Additionally, Petitioner has failed to show what information, if any, Chuck would have been able to provide that would have benefitted his defense at trial. His conclusory allegations are insufficient to demonstrate that counsel erred or that he was prejudiced by counsel's conduct. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007) (conclusory allegations are insufficient to justify habeas relief); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for evidentiary hearing on habeas review). Petitioner has not shown that trial counsel was ineffective under the *Strickland* standard.

Petitioner next asserts that trial counsel was ineffective for failing to gather and

17

present exculpatory evidence.  Specifically, he claims that trial counsel should have: (1) investigated the victim's property to see if he had any money, (2) moved to suppress the victim's photographic identification as suggestive, (3) investigated Anthony Bivens about the third party who gave Petitioner's name, (4) investigated a missing police report which would have shown that the victim never told police he was robbed, (5) investigated the victim's medical records for chronic alcoholism and blackouts, and (6) brought out the victim's criminal record for impeachment.

Petitioner fails to show that counsel erred by not investigating the victim's property at the hospital, or that he was prejudiced by such conduct.  First, even if Tucker had money on him after the shooting, that fact would not prove that he had not been robbed. He could have given some money to Petitioner and retained some money for himself. Second, Petitioner's defense at trial was mistaken identity – not to dispute the fact that Tucker was robbed or shot.  This was a reasonable trial strategy under the circumstances. Third, Petitioner has not shown that such a search would have produced exculpatory evidence.  As noted, conclusory allegations are insufficient to justify habeas relief.

Petitioner also fails to show that counsel erred and/or that he was prejudiced by counsel's decision not to seek suppression the victim's photographic identification.  A conviction based on identification testimony following a pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  If a witness is shown an unduly suggestive photographic lineup, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive lineup.  *United States*

18

*v. Wade*, 388 U.S. 218, 241 (1967).  It is not unduly suggestive, however, to show a photograph of a single suspect to a person who already knows the suspect when it is done for the purpose of confirming whether the defendant is the person on the photograph. *United States v. Beverly*, 369 F.3d 516, 539 (6th Cir. 2004).  In this case, Tucker indicated that he knew the man who shot him from the neighborhood, but could not recall his name. He also gave the police the name Dominic.  Detective Marzette then showed him Petitioner's photograph to confirm his identity.  Given such circumstances, the identification procedure was not unduly suggestive.  Consequently, counsel cannot be deemed ineffective for failing to request a suppression hearing.  Counsel cannot be deemed ineffective for failing to make a futile motion or objection.  *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Moreover, counsel challenged Tucker's identification of Petitioner throughout the trial.  This was a reasonable strategy that defeats Petitioner's ineffective assistance claim. *See Millender v. Adams*, 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002) (citing *Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir. 1993)).  Finally, Tucker's identification of Petitioner was independently reliable given that he knew Petitioner from the neighborhood, that Petitioner admitted being in his van on the night of the crime, and that he was certain of his identification at trial.  Petitioner thus cannot show that he was prejudiced by counsel's conduct in this regard.

Petitioner has also not shown that trial counsel erred and/or that he was prejudiced by counsel's decision not to investigate Anthony Bivens to learn about the third party who gave him Petitioner's name.  Bivens did not testify at trial and the prosecutor did not rely upon him to establish Petitioner's guilt of the charged offenses.  Rather, the prosecutor

19

relied upon the victim's own testimony to make its case. Petitioner has not shown what Bivens would have said or what additional information he would have acquired which would have benefitted his defense. As noted, conclusory allegations are insufficient to warrant habeas relief. Moreover, the record indicates that counsel used Bivens' absence to his advantage. He successfully brought out the fact that Bivens did not witness the shooting, while precluding the prosecution from admitting Bivens' statements on hearsay/confrontation grounds. Petitioner has not shown that counsel was ineffective.

Petitioner similarly fails to demonstrate that trial counsel erred and/or that he was prejudiced by counsel's failure to investigate a "missing" police report which he believes would have shown that the victim never told police he was robbed. First, the record belies Petitioner's claim that a police report was missing. Rather, it appears that the police witnesses referenced their reports to refresh their recollections, but the reports were not admitted into evidence. Counsel was able to sufficiently cross-examine the police witnesses about Tucker's various statements, as well as question Tucker himself about the events at issue. Second, Petitioner has not produced a police report to substantiate his allegation. He has thus failed to establish that counsel was ineffective.

Petitioner also fails to show that counsel erred and/or that he was prejudiced by counsel's alleged failure investigate the victim's medical condition as to chronic alcoholism and blackouts. First, Tucker admitted being intoxicated on the night of the incident and admitted that he could not initially remember the name of the man who shot him. Counsel emphasized these facts throughout the trial. Second, Petitioner has not shown that additional medical information was available, relevant, or admissible – nor has he presented any such records or shown that they would have helped his case. Conclusory

20

allegations are insufficient to establish that counsel was ineffective.

Lastly, Petitioner fails to show that counsel erred and/or that he was prejudiced by counsel's failure to use the victim's criminal record for impeachment. First, Petitioner fails to establish that any criminal record would have been admissible under state evidentiary rules. Second, Petitioner's defense at trial was not to attack the victim per se, but to establish that he was mistaken about the identity of the man who robbed and shot him. Third, Petitioner offers no evidence to support this claim and his conclusory allegations are insufficient. Petitioner has not shown that counsel was ineffective.

In sum, while Petitioner alleges that trial counsel failed to provide adequate representation in several respects, such allegations are not supported by the record. Petitioner has not alleged facts to show what more trial counsel could have done which would have benefitted his defense or affected the outcome at trial. Counsel presented a reasonable defense of mistaken identity, challenged the prosecution's case by cross-examining the victim about his version of events, highlighted the lack of physical evidence linking Petitioner to the crime, as well as his lack of motive, and made relevant legal arguments. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to show that counsel was ineffective under the *Strickland* standard.

Petitioner also asserts that trial counsel was ineffective for failing to object to the admission of the victim's medical records. Petitioner, however, fails to establish a valid basis for objection. The records were relevant and admissible under state law. Their

admission also did not violate his confrontation rights.   The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him.   *Davis v. Alaska*, 415 U.S. 308, 315 (1973).   In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.   Testimonial statements include grand jury testimony, preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations.   *Id.* at 54.   Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy.   *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007).   The Confrontation Clause is not implicated, and thus need not be considered, however, when non-testimonial hearsay is at issue.   *Davis v. Washington*, 547 U.S. 813, 823-26 (2006); *Desai v. Booker*, 538 F.3d 424, 425-26 (6th Cir. 2008).   In this case, the victim's medical records were admissible under the business records exception to the hearsay rule.   *See* Mich. R. Evid. 803(6).   Moreover, the Supreme Court has ruled that medical reports created for treatment are non-testimonial.   *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 n. 2 (2009).   Because the victim's medical records were non-testimonial, their admission did not violate the Confrontation Clause.   *United States v. Baker*, 458 F.3d 513, 519 (6th Cir. 2006).   Consequently, trial counsel did not err in failing to object to their admission at trial and was not ineffective.

Petitioner further asserts that he is entitled to relief based upon the cumulative effect of trial counsel's alleged errors.   Petitioner, however, has failed to establish that trial

22

counsel erred in the first instance.  Consequently, he cannot establish that he is entitled to relief based upon cumulative error.  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Moreover, "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *see also Parks v. Bobby*, _ F. App'x _, 2013 WL 6038224, *5 n. 2 (6th Cir. Nov. 15, 2013) (citing *Lorraine* and denying relief on trial counsel cumulative error claim); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).  Habeas relief is not warranted on this basis.

Lastly, Petitioner asserts that appellate counsel was ineffective for failing to raise the foregoing ineffective assistance of trial counsel issues and request a *Ginther* hearing on direct appeal.  Given this Court's determination that the foregoing ineffective assistance of trial counsel claims lack merit and do not warrant relief, Petitioner cannot establish that appellate counsel was deficient and/or that he was prejudiced by appellate counsel's conduct.  Appellate counsel cannot be deemed ineffective for failing to raise non-meritorious issues.  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).  Petitioner has thus failed to demonstrate that appellate counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted.

### 3.    Confrontation Rights

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting testimony from Sergeant Jason Marzette about statements made by informant Anthony Bivens.

23

As discussed *supra*, the Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to confront the witnesses against him. *Davis*, 415 U.S. at 315. The Supreme Court has held that the testimonial statement of a witness who does not appear at trial, which is offered for the truth of the matter asserted, is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 59, 68. Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements during police interrogations. *Id.* at 54.

Petitioner first raised this issue on collateral review in the state courts and was denied relief. The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.[2] Petitioner has not shown a violation of his constitutional rights. The prosecution did not offer any statements by Anthony Bivens as substantive evidence at trial. The challenged testimony by Detective Marzette was relevant and admissible under state law to explain the course of the police investigation, including why Bivens had not appeared at trial, and was not offered for the truth of the matter asserted. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, n. 9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The nonhearsay aspect [of an out-of-court statement] . . . raises no Confrontation Clause concerns."); *United States v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) ("testimony provided merely by way of background, or to explain simply why the

---

[2]The Court notes that it would reach the same result under a *de novo* standard of review.

24

Government commenced an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights"). Defense counsel, not the prosecution, brought out the fact that Bivens was at the scene of the shooting, but did not witness it, and only heard about the possible shooter from a third party. Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and his petition must be denied.

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his claims. A certificate of appealability is not warranted.

Accordingly;

25

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and

**DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


/s/Gershwin A Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  January 24, 2014


CERTIFICATE OF SERVICE

Copies of this Order were served upon the attorneys of record and/or the parties of record by electronic and/or US Postal first class mail on  January 24, 2014 .


s/Tanya R Bankston
Case Manager for Judge Drain